**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**PEROLA HALIKMAN,**

    **Plaintiff,**

**-vs-**　　　　　　　　　　　　　　　　　　　　　　**Case No. 6:10-cv-1538-Orl-28DAB**

**CREATIVE HAIRDRESSERS, INC., d/b/a**
**HAIR CUTTERY,**

    **Defendant.**
_____

## ORDER

Perola Halikman ("Plaintiff") brings the instant action against her former employer, Creative Hairdressers, Inc., d/b/a Hair Cuttery ("Defendant"), alleging that she was terminated because of her age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq. The case is currently before the Court on Defendant's Motion for Summary Judgment (Doc. 21), Plaintiff's Memorandum in Opposition (Doc. 25), and Defendant's Reply (Doc. 27). Upon consideration of the record in this matter and pertinent law, and as more specifically set forth below, the Court concludes that Defendant's motion shall be granted.

### I. Factual Background

Plaintiff was employed by Defendant as a hair stylist from October 2007 through November 2, 2008. Plaintiff was sixty-seven years old when she was hired and sixty-eight years old when her employment was terminated. The manager—known as the "salon

leader"—of the salon where Plaintiff worked was Kristen Mummert; Mummert in turn reported to the district leader, Ginger DeLong, who visited the salon at least once a month. Mummert interviewed and hired Plaintiff, and the parties have stipulated that DeLong made the decision to terminate Plaintiff's employment. (Am. Joint Pretrial Statement, Doc. 39, at 4).

According to Defendant, Plaintiff was terminated for misconduct—specifically, for threatening to kill a fellow employee. This threat was allegedly made after an incident at the salon a few days prior to Plaintiff's termination. That incident occurred after one of Plaintiff's co-workers, Kristen Coppedge—a new stylist who had worked at the salon for only a few months—was coloring a client's hair and encountered difficulties. Coppedge and some of the other stylists went to the back of the salon to discuss how to fix the color of the client's hair. Plaintiff then approached the client, though the evidence is in dispute as to what Plaintiff said to the client. Plaintiff claims that she tried to put the client at ease by telling her that Coppedge was a good hair stylist and would resolve the issue. However, other witnesses—including Coppedge and another stylist, Anthony Nguyen—informed Mummert that Plaintiff told Coppedge's client her hair was a mess, that Coppedge was not a good stylist, and that the client should not pay for the procedure.

Mummert learned of the incident later that evening when Coppedge called her to complain about Plaintiff's actions. The next day, Mummert called Plaintiff to the back and asked her what had happened the day before. Mummert testified in her deposition that Plaintiff became very defensive and angry, began banging her fist on a table, and stood up.

(Mummert Dep. at 68). According to Mummert and Coppedge,[1] Plaintiff then stated, "I will kill him," referring to Nguyen,[2] (id. at 69; Coppedge Dep. at 36); Plaintiff denies making this statement.

Mummert then told Plaintiff she could assist a client who was waiting for service, and Mummert called DeLong and told her what had transpired. DeLong asked to speak with Plaintiff on the telephone, and DeLong discussed the matter with Plaintiff and then told her that after she finished working on the client she should go home for the day. After discussing the matter more thoroughly with Mummert and then speaking to Human Resources, DeLong made the decision to terminate Plaintiff based on the threat to Nguyen that Mummert had reported.[3] (DeLong Dep. at 48-49, 59).

Plaintiff filed this lawsuit in October 2010. She contends that she was terminated not because of misconduct but because of her age.

## II. Summary Judgment Standards

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

---

[1] Coppedge testified that she and other stylists could hear Plaintiff yelling and pounding her fists during her meeting in the back with Mummert. (Coppedge Dep. at 35-36).

[2] Mummert testified in her deposition that Nguyen had provided information about the incident that was consistent with Coppedge's account, but Mummert had not mentioned Nguyen to Plaintiff as a source of information prior to Plaintiff threatening to kill Nguyen. (Mummert Dep. at 64, 69).

[3] Under Defendant's Fair and Equal Treatment Policy, a threat to a client or another stylist is a terminable offense. (See Ex. 5 to Mummert Dep.).

-3-

Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, the Court construes the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). However, when faced with a "properly supported motion for summary judgment, [the nonmoving party] must come forward with specific factual evidence, presenting more than mere allegations." Gargiulo v. G.M. Sales, Inc., 131 F.3d 995, 999 (11th Cir. 1997).

Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative." Sawyer v. Southwest Airlines Co., 243 F. Supp. 2d 1257, 1262 (D. Kan. 2003) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-51 (1986)).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249. "Essentially, the inquiry is 'whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.'" Sawyer, 243 F. Supp. 2d at 1262 (quoting Anderson, 477 U.S. at 251-52); see also Laroche v. Denny's, Inc., 62 F. Supp. 2d 1366, 1371 (S.D. Fla. 1999) ("The law is clear . . . that suspicion, perception, opinion, and belief cannot be used to defeat a motion for summary judgment."). "[T]he summary judgment rule applies in job discrimination cases just as in other cases. No thumb is to be placed on

either side of the scale." Chapman v. AI Transp., 229 F.3d 1012, 1026 (11th Cir. 2000).

### III. The Merits of Defendant's Motion

The parties disagree on whether Plaintiff has presented "direct evidence" in support of her claim or whether she relies only on circumstantial evidence of discrimination. This distinction is important because under well-established case law the type of evidence presented determines how Plaintiff's claim is analyzed; "[t]he analytical framework and burden of production varies depending on the method of proof chosen." Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1330 (11th Cir. 1998).

#### a. Direct Evidence

As the Eleventh Circuit has explained, "[d]irect evidence is evidence that establishes the existence of discriminatory intent behind the employment decision without any inference or presumption." Standard, 161 F.3d at 1330. Evidence that "*suggests*—but does not prove—a discriminatory motive . . . is circumstantial [rather than direct] evidence." Burrell v. Bd. of Trs. of Ga. Military Coll., 125 F.3d 1390, 1393-94 (11th Cir. 1997) (internal quotation and footnote omitted). "[R]emarks by non-decisionmakers or remarks unrelated to the decisionmaking process itself are not direct evidence of discrimination." Standard, 161 F.3d at 1330.

In the age-discrimination context, "not every comment concerning a person's age presents direct evidence of discrimination." Carter v. City of Miami, 870 F.2d 578, 582 (11th Cir. 1989). "[R]emarks merely referring to characteristics associated with increasing age, or facially neutral comments from which a plaintiff has inferred discriminatory intent, are not directly probative of discrimination." Id. (citing Young v. General Foods Corp., 840 F.2d 825,

829 (11th Cir. 1988). "Rather, courts have found only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of age, to constitute direct evidence of discrimination." Id.; see also Damon v. Fleming Supermarkets of Fla., Inc., 196 F.3d 1354, 1358-59 (11th Cir. 1999) (noting that in order to constitute direct evidence, "the evidence must indicate that the complained-of employment decision was *motivated* by the decisionmaker's ageism").

Application of the direct evidence standard has been rigorous. See, e.g., Bradley v. Pfizer, Inc., 440 F. App'x 805, 807-08 (11th Cir. 2011) (finding that statement by hiring manager to plaintiff during preliminary phone interview that plaintiff "did not sound like a 'spring chicken'" was not direct evidence of age discrimination where hiring manager selected plaintiff to continue to the final round of interviews and did not participate in those interviews or in ultimate hiring decisions); Ritchie v. Indus. Steel, Inc., 426 F. App'x 867, 871-72 (11th Cir. 2011) (decisionmakers' references to plaintiff as an "old man" were not direct evidence because they were not made in relation to the decision to terminate him); Hollins v. Fulton Cnty., 422 F. App'x 828, 831 (11th Cir. 2011) (statement by sheriff that he "was going to 'get rid of all of you old people who have been here a long time that don't want to do your job'" was not direct evidence in age discrimination case brought by former deputy sheriff; such statement "is open to multiple interpretations . . . [and] appears to have been aimed at people who were not performing well on-the-job"); Beaver v. Rayonier, Inc., 200 F.3d 723, 729-30 (11th Cir. 1999) (noting that statement by decisionmaker that he wanted "to attract 'younger, engineer-type employees or supervisors'" did not amount to direct evidence); Damon, 196 F.3d at 1359 (finding that statement by decisionmaker to fired plaintiff's replacement that

"what the company needed was aggressive *young* men like [the replacement] to be promoted" did not constitute direct evidence because it required an inference that the termination decision was motivated by the desire to promote younger workers); Godby v. Electrolux Corp., Civ. No. 1:93-cv-0353-ODE, 1994 WL 777327, at *11 (N.D. Ga. Sept. 26, 1994) (characterizing statements that plaintiff "did not look his age" and did not appear old enough to have a twenty-year-old son were "nothing more than innocent banter" that did not amount to direct evidence).

Plaintiff identifies several comments and other pieces of evidence that she urges constitute direct evidence of age discrimination. First, she relies on comments made by DeLong during a salon meeting several days prior to the incident regarding Coppedge's client. During that meeting, DeLong expressed displeasure about the attitude of some of the stylists, and DeLong made reference to "young hairdressers" and "fresh stylists" right out of school who were waiting to work for Defendant. (Coppedge Dep. at 24; Mummert Dep. at 45-46; Pl. Dep. at 57 ). There is also evidence that during that meeting DeLong made reference to changes being made including increased prices and "new energy" in the shop. (Pl. Dep. at 57-58, 102-03; Mummert Dep. at 58). Plaintiff also asserts that Defendant's advertising campaign targeting younger clientele is direct evidence of age discrimination. Finally, Plaintiff argues that Mummert reacted by appearing "scared" when Plaintiff told her she intended never to retire and that this constitutes direct evidence.[4]

---

[4] Plaintiff also cites three declarations in support of her direct evidence argument. (See Doc. 25 at 12-13 (citing Decls. of Melendy, Ellis, & Springton)). However, as Defendant aptly notes, these declarations (Docs. 26-2, 26-3 & 26-4) are unsworn and thus are not properly considered on summary judgment. See Carr v. Tatangelo, 338 F.3d 1259, 1273

However, the evidence relied upon by Plaintiff does not constitute direct evidence of discrimination. The advertising campaign does not tend to show age discrimination in employment—even indirectly—and Mummert's reaction to Plaintiff's nonretirement intentions did not occur in the context of Plaintiff's termination and also was not the comment of the undisputed decisionmaker, DeLong. Cf. Davidson v. Quorum Health Grp., Inc., 1 F. Supp. 2d 1321, 1325 (N.D. Ala. 1997) (concluding that supervisor's statements that plaintiff was "old enough to retire" and "ought to get on out of here" were disparaging but did not alone evidence discriminatory intent). Finally, even the comments made by DeLong at the salonwide meeting do not constitute direct evidence. The comments were not made in connection with Plaintiff's termination but instead occurred several days earlier during a motivational meeting by the district leader directed at the entire salon. Moreover, references to "new energy," "young hairdressers," and "fresh stylists right out of school" do not establish age animus "without any inference or presumption" and thus are not direct evidence.[5] Thus, the Court finds that Plaintiff has not presented any direct evidence of age discrimination and therefore she must rely on circumstantial evidence to attempt to establish her case.

---

n.26 (11th Cir. 2003); accord Dudley v. City of Monroeville, 446 F. App'x 204, 207 (11th Cir. 2011) ("Unsworn statements do not meet the requirements of Rule 56, so the district court could not—and properly did not—rely on the content of the [unsworn] statement.").

These declarations do not identify direct evidence of age discrimination in any event; thus, even if they were sworn they would not alter the analysis or conclusions reached herein. None of the identified statements was made in the context of the termination decision, and these witnesses describe statements and actions of Mummert, who was not the decision-maker.

[5]Indeed, Plaintiff testified in her deposition that when she heard DeLong refer to "new energy," she thought DeLong was referring to Plaintiff because Plaintiff has a lot of energy—more than some of the young girls. (Pl. Dep. at 57-58, 103-04).

### b. Circumstantial Evidence

Because Plaintiff has not presented any direct evidence of discrimination, the Court evaluates her claim using the burden-shifting framework established by <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973), and its progeny to determine if Plaintiff can establish her claim through circumstantial evidence. See, e.g., <u>EEOC v. Joe's Stone Crab, Inc.</u>, 220 F.3d 1263, 1286 (11th Cir. 2000) ("Disparate treatment claims require proof of discriminatory intent either through direct or circumstantial evidence. . . . Absent direct evidence, a plaintiff may prove intentional discrimination through the familiar <u>McDonnell Douglas</u> paradigm for circumstantial evidence claims.").

Under this three-part framework, the plaintiff in a disparate treatment case has the initial burden to establish a prima facie case of discrimination by a preponderance of the evidence. <u>McDonnell Douglas</u>, 411 U.S. at 802. "Demonstrating a prima facie case is not onerous; it requires only that the plaintiff establish facts adequate to permit an inference of discrimination." <u>Holifield v. Reno</u>, 115 F.3d 1555, 1562 (11th Cir. 1997). If the plaintiff establishes a prima facie case, a presumption of discrimination arises. See, e.g., <u>Texas Dep't of Cmty. Affairs v. Burdine</u>, 450 U.S. 248, 254 (1981).

If the plaintiff presents a prima facie case and its attendant presumption, the burden "[s]hifts to the employer to articulate some legitimate, nondiscriminatory reason" for its actions. <u>McDonnell Douglas</u>, 411 U.S. at 802. The employer's "burden is one of production, not persuasion; it 'can involve no credibility assessment.'" <u>Reeves</u>, 530 U.S. at 142 (quoting <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 509 (1993)). "If the defendant articulates one or more such reasons, the presumption of discrimination is eliminated and 'the plaintiff has

the opportunity to come forward with evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision.'" Chapman, 229 F.3d at 1024 (quoting Combs v. Plantation Patterns, 106 F.3d 1519, 1528 (11th Cir. 1997)).

### A. Prima Facie Case

Case law has produced many different articulations of the elements of a plaintiff's prima facie case. The elements are to be flexibly rather than rigidly applied, and the formulations of these elements depend on the type of case and the pertinent facts. See, e.g., Carter, 870 F.2d at 582 & 583 nn.12 & 14 (11th Cir. 1989) (noting variation in prima facie elements and that "[t]he Supreme Court has stressed that the *McDonnell* test was not intended to be a rigid or ritualistic test of disparate treatment"). An ADEA plaintiff may establish a prima facie case of age discrimination by showing that she: "(1) was a member of the protected age group, (2) was subjected to adverse employment action, (3) was qualified to do the job, and (4) she was replaced by or otherwise lost a position to a younger individual." Chapman, 229 F.3d at 1024. Or, even if not replaced by someone younger, a plaintiff may satisfy the last element by identifying similarly situated comparators outside her protected class who were treated more favorably. See, e.g., Maynard v. Bd. of Regents of Div. of Univs. of Fla. Dept. of Educ., 342 F.3d 1281, 1289 (11th Cir. 2003).

Defendant challenges only the last of these four elements, for it is undisputed that Plaintiff was within the protected age group, was terminated, and was qualified. Plaintiff asserts that she has satisfied the fourth element because she was replaced by a stylist in her

-10-

twenties. Plaintiff avers that "[a]t some point subsequent to Plaintiff's termination, Defendant hired [a 24- or 25-year-old stylist] who took over Plaintiff's assigned chair in the salon." (Doc. 25 at 10 (citing Coppedge Dep. at 41)). Defendant, however, asserts that Coppedge's testimony is insufficient to establish this element because Coppedge was not in charge of hiring and because Coppedge testified that the younger stylist was hired in "2010, maybe," (Coppedge Dep. at 42)—at least thirteen months after Plaintiff was terminated in November. The other evidence on this point is that Plaintiff was not replaced and instead the schedule was adjusted. (Mummert Dep. at 54-55).

In light of the flexibility afforded to plaintiffs in establishing a prima facie case—especially in age discrimination cases—the Court finds evidence of absorption of duties by younger workers and eventual "replacement" by a younger employee to be sufficient to establish the fourth element under the circumstances of this case. See generally Phillips v. Aaron Rents, Inc., 262 F. App'x 202, 208-09 (11th Cir. 2008) (discussing ways of satisfying fourth element in age discrimination case and collecting cases).

B. Pretext

In response to Plaintiff's prima facie case, Defendant has articulated a legitimate, nondiscriminatory reason for terminating Plaintiff—that Plaintiff threatened a co-worker during her discussion with Mummert about the incident in the salon the previous day. Thus, Defendant is entitled to summary judgment unless Plaintiff presents evidence creating a genuine issue of material fact regarding whether Defendant's asserted reason is a mere pretext for age discrimination. See, e.g., Chapman, 229 F.3d at 1024-25 ("If the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether

each of the defendant employer's articulated reasons is pretextual, the employer is entitled to summary judgment on the plaintiff's claim.").

In determining whether an issue has been raised as to pretext, this Court "must, in view of all the evidence, determine whether the plaintiff has cast sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable factfinder to conclude that the employer's proffered legitimate reasons were not what actually motivated its conduct." Combs, 106 F.3d at 1538 (citation and internal quotation omitted). This determination involves an "evaluat[ion of] whether the plaintiff has demonstrated 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence.'" Id. (quoting Sheridan v. E.I. DuPont de Nemours & Co., 100 F.3d 1061, 1072 (3d Cir. 1996)). "The inquiry into pretext centers upon the employer's beliefs, and not the employee's own perceptions of [her] performance." Holifield, 115 F.3d at 1565.

Applying these standards, Plaintiff has failed to present evidence creating a genuine issue of material fact regarding whether Defendant's reason for terminating her was a pretext for age discrimination. See Tidwell v. Carter Prods., 135 F.3d 1422, 1427 (11th Cir. 1998) (finding no issue raised as to pretext where evidence presented did "not provide the needed 'more than a mere scintilla of evidence' to survive a motion for judgment as a matter of law" and did "not present a substantial conflict in the evidence as to [the employer's] purported reason for terminating [the plaintiff] . . . as to support a jury question"). Plaintiff continues to dispute what happened during the incident with Coppedge's client and in the ensuing meeting

with Mummert, but she has not presented evidence showing that Defendant's decisionmaker did not honestly believe that she threatened a co-employee. This latter issue is the relevant question. See Damon, 196 F.3d at 1363 n.3 ("An employer who fires an employee under the mistaken but honest impression that the employee violated a work rule is not liable for discriminatory conduct."); Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1470 (11th Cir. 1991) ("'[N]o matter how mistaken the firm's managers, the ADEA does not interfere. [The court's] inquiry is limited to whether the employer gave an honest explanation of its behavior.'" (quoting Mechnig v. Sears, Roebuck & Co., 864 F.2d 1359, 1365 (7th Cir. 1988))); cf. EEOC v. Total Sys. Servs., Inc., 221 F.3d 1171, 1176 (11th Cir. 2000) ("When an employer is told of improper conduct at its workplace, the employer can lawfully ask: is the accusation true? When the resulting employer's investigation . . . produces contradictory accounts of significant historical events, the employer can lawfully make a choice between the conflicting versions—that is, to accept one as true and to reject one as fictitious—at least, as long as the choice is an honest choice.").

Plaintiff acknowledges that DeLong was the decisionmaker and that DeLong terminated her after being told by Mummert of Plaintiff's statements and actions during their meeting regarding the incident involving Coppedge's client. Absent evidence to challenge the honest belief of the decisionmaker as to her conduct, and even considering DeLong's comments during the earlier salonwide meeting, Plaintiff fails to create a triable issue as to pretext. Cf. Watson v. Kelley Fleet Servs., LLC, 430 F. App'x 790, 791 (11th Cir. 2011) (affirming summary judgment for employer where "[t]here was ample evidence to show [that the plaintiff] was involved in an altercation with a co-worker, and [the employer's] investigation

confirmed at least one witness heard [the plaintiff] physically threaten the co-worker," which established the employer's good-faith belief as to a violation of company policy). Accordingly, Defendant's motion for summary judgment shall be granted. See Weston-Smith v. Cooley Dickinson Hosp., Inc., 282 F.3d 60, 70 (1st Cir. 2002) (affirming summary judgment for employer, noting that the "proffered reasons for [the plaintiff's] termination are plausible and coherent, and neither [the plaintiff's] criticisms of those reasons nor her independent circumstantial evidence of an improper motive, whether taken apart or together, are sufficient to require a jury trial").

## IV. Conclusion

In accordance with the foregoing, it is **ORDERED** and **ADJUDGED** as follows:

1. Defendant's Motion for Summary Judgment (Doc. 21) is **GRANTED**.

2. The Clerk is directed to enter a judgment providing that Plaintiff shall take nothing on her claim against Defendant. Thereafter, the Clerk shall close the file.

3. All other pending motions are **DENIED as moot**.

**DONE** and **ORDERED** in Orlando, Florida this 24th day of February, 2012.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record